UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JERRY ANDERSON,

        Plaintiff,

v.

COLTER FURST, Michigan State
Trooper, MICHAEL THOMAS,
Michigan State Trooper, and
NATHAN ELLIS, Michigan
State Trooper,

        Defendants.
_____/

Case No. 17-12676
District Judge Victoria A. Roberts
Magistrate Judge Anthony P. Patti

## ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT [ECF No. 122]

**I.    INTRODUCTION**

Jerry Anderson ("Anderson") is a state prisoner proceeding *in forma pauperis*. He filed a civil rights lawsuit pursuant to 42 U.S.C. § 1983 against Colter Furst, Michael Thomas, and Nathan Ellis (collectively, "Defendants").

Anderson alleges that Defendants, all Michigan State Police Troopers, violated his Fourth Amendment rights by using excessive force during his September 4, 2015 arrest. He seeks injunctive and declaratory relief, in addition to compensatory and punitive damages.

1

Before the Court is Anderson's Motion for Summary Judgment. [ECF No. 122]. There is a genuine dispute over whether officers used more force than necessary to arrest Anderson.

In response to Anderson's motion for summary judgment, Defendants say that there is a dispute of material fact and, in the alternative, they are entitled to qualified immunity. Defendants' response is akin to a cross-motion for summary judgment on the issue of qualified immunity, which they supported with affidavits and other documents. That should have been filed independent of their response. Nonetheless, Defendants are not entitled to qualified immunity.

The Court **DENIES** Anderson's Motion. [ECF No.122].

## II. BACKGROUND

On September 4, 2015, Anderson led officers on a high-speed car chase for about thirty miles.

Earlier that day, a dispatcher advised officers that there was a BOL ("be on look-out") issued for a light-colored Ford Crown Victoria or Mercury style vehicle involved in a shooting and homicide in Clio, Michigan. Around 10:50 pm that evening, Genesee Township Police advised that they located

a vehicle matching this description. As officers attempted to stop the car, Anderson initiated a high-speed pursuit that spanned around 30 miles.

The chase ended when officers executed a Precision Immobilization Technique (PIT) maneuver that halted Anderson's car. Effectively, officers pinned it, preventing Anderson from fleeing.

Officers ordered Anderson to surrender. Anderson contends that he voluntarily surrendered; however, officers state Anderson refused to comply with their "loud verbal commands" to exit the car with his arms up. Three officers – including Defendants Furst and Ellis – forcibly removed Anderson and placed him on the ground. While removing Anderson from the car, Furst observed a pistol magazine in the driver's seat.

Officers tried to handcuff Anderson while he was on the ground. They say Anderson refused to allow officers to handcuff his left arm and concealed it under his body. Because Furst was unable to pull Anderson's arm from underneath his body and believing that Anderson could be armed, he "delivered an elbow strike to [Anderson's] left side/oblique area." Anderson still refused to give up his left arm. Furst delivered a second strike to the same area. Furst was then able to remove Anderson's left arm and cuffed him.

## III. LEGAL STANDARD

Under Federal Rule of Civil Procedure 56(a), "[t]he Court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The movant bears the initial burden to inform the Court of the basis for its motion; it must identify particular portions of the record that demonstrate the absence of a genuine dispute as to any material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the movant satisfies its burden, the non-moving party must set forth specific facts showing a genuine issue for trial. *Id.* at 324. Unsupported, conclusory statements are insufficient to establish a factual dispute to defeat summary judgment, as is the "mere existence of a scintilla of evidence in support of the [non-movant's] position"; the evidence must be such that a reasonable jury could find in its favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986); *Alexander v. CareSource*, 576 F.3d 551, 560 (6th Cir. 2009).

In deciding a summary judgment motion, the Court "views the factual evidence and draws all reasonable inferences in favor of the nonmoving party." *McLean v. 988011 Ontario, Ltd.*, 224 F.3d 797, 800 (6th Cir. 2000). The Court need only consider the cited materials, but it may consider other evidence in the record. Fed. R. Civ. P. 56(c)(3). The Court's function at the

summary judgment stage "is not to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Liberty Lobby*, 477 U.S. at 249.

**IV.  ANALYSIS**

Anderson argues officers used excessive force to arrest him, and that there is no question of fact that they did so  The Court disagrees.

**A. There is a Question of Fact Concerning Excessive Force**

42 U.S.C. § 1983 states in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen . . . the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

"To state a cause of action under § 1983, a plaintiff must allege the deprivation of a right secured by the United States Constitution or a federal statute by a person who was acting under color of state law." *Spadafore v. Gardner*, 330 F.3d 849, 852 (6th Cir. 2003). Defendants do not dispute they acted under color of law, and that Anderson alleges Defendants violated his Fourth Amendment right not to be subjected to the excessive use of force.

But, Defendants deny any constitutional violation and assert they are entitled to qualified immunity in any event.

Claims of excessive force by police officers during an arrest must be analyzed under the Fourth Amendment and its "reasonableness" standard. *Graham v. Connor,* 490 U.S. 386, 395 (1989). In *Graham*, the Court stated that "the right to make an arrest or investigatory stop necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it." *Id.* at 396. Therefore, when analyzing such a claim the Court must consider: 1) the severity of the crime; 2) whether the suspect poses an immediate threat to the safety of officers or others; and 3) whether the suspect is actively resisting arrest or attempting to flee. *Id.*

The Court must determine "whether the officers' alleged actions are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." *Id.* at 397. Reasonableness "must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Id* at 396. A plaintiff need not suffer serious or permanent injury. *Johnson v. City of Ecorse*, 137 F.Supp.2d 886, 892 (E.D. Mich. 2001) (plaintiff's complaint of injury to his wrist from tight handcuffs sufficient). However, there must be

more force than "than the mere technical battery that is inextricably a part of any arrest." *Id.*

Anderson alleges excessive force at two points: 1) during attempts to handcuff him and 2) after he was handcuffed. At each point, there is a question of fact over whether Defendants used excessive force against Anderson.

First, reasonable jurors could disagree over the amount of force used to handcuff Anderson and whether it was proportional to his resistance and, therefore, objectively reasonable. The parties dispute whether Anderson resisted Defendants' efforts to cuff him – Anderson says he surrendered while Defendants indicate that Anderson actively resisted and refused to give up his left arm. Anderson was armed, but Defendants admit that his alleged resistance, although persistent, was limited primarily to keeping his left arm away from them. Considering that Defendants were attempting to apprehend a homicide suspect, jurors could disagree regarding whether Defendants' eventual response with their weapons and force was proportional to Anderson's resistance and, therefore, reasonable.

For his second claim, Anderson asserts that Defendants continued to strike him after he was handcuffed and on the ground as officers searched for his weapon. Anderson says he was kicked and thrown to the ground. He

says this was clearly excessive. Defendants dispute this assertion. The Court reviewed the dashcam footage provided by the parties; however, it does not capture the moments that officers allegedly used excessive force to effectuate the arrest.

Anderson's claim that Defendants continued to strike him after he surrendered (1) before being handcuffed, and (2) after he was handcuffed, is sufficient to raise a question of fact concerning the amount of force that was necessary under the circumstances.

### B. Defendants are not Entitled to Qualified Immunity as a Matter of Law

> A court required to rule upon the qualified immunity issue must consider, then, this threshold question: Taken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right? This must be the initial inquiry.
> * * *
>
> If no constitutional right would have been violated were the allegations established, there is no necessity for further inquiries concerning qualified immunity. On the other hand, if a violation could be made out on a favorable view of the parties' submissions, the next, sequential step is to ask whether the right was clearly established.

*Saucier v. Katz*, 533 U.S. 194, 201 (2001) (internal citation omitted).

Anderson satisfied the first prong of the analysis because the Fourth Amendment right to be free from excessive force is clearly established.

*Adams*, 31 F.3d at 386; *Johnson,* 137 F.Supp.2d at 893. Under the second prong, the Court must determine whether reasonable officers in Defendants' positions would have known that their alleged actions violated clearly established rights.

The Court must employ a standard of objective reasonableness and analyze claims of immunity on a fact-specific, case-by-case basis to decide if a reasonable official in the officer's position could have believed his or her conduct was lawful, in light of clearly established law and the information possessed. *Id.*; *Adams v. Metiva*, 31 F.3d 375, 386 (6th Cir. 1994) ( "[T]he question is whether any officer in the defendant's position, measured objectively, would have clearly understood that he was under an affirmative duty to have refrained from such conduct.") (*quoting Brandenburg v Cureton*, 882 F.2d 211, 215 (6th Cir. 1989)).

The ultimate burden rests with Anderson to show Defendants are not entitled to qualified immunity. *Gardenhire v Schubert*, 205 F.3d 303, 311 (6th Cir. 2000). However, a "defendant bears the initial burden of coming forward with facts to suggest that he acted within the scope of his discretionary authority during the incident in question." *Id.* Thereafter, the burden shifts to the plaintiff to establish that the defendant's conduct violated a right so clearly established that any official in his position would have clearly

understood he was under an affirmative duty to refrain from such conduct." *Id.*

Whether a Defendant is entitled to qualified immunity is usually a question of law for the court to decide. *Brandenburg*, 882 F.2d at 215. But, when the relevant facts are in dispute, the court must leave the factual findings to the trier of fact:

> [S]ummary judgment would not be appropriate if there is a factual dispute (i.e., a genuine issue of material fact) involving an issue on which the question of immunity turns, such that it cannot be determined before trial whether the defendant did acts that violate clearly established rights.

*Gardenhire*, 205 F.3d at 311. *See also Adams,* 31 F.3d at 387 ("[T]he jury becomes the final arbiter of [defendant's] claim of immunity, since the legal question of immunity is completely dependent upon which view of the facts is accepted by the jury.").

Because the relevant facts with respect to what occurred during attempts to handcuff Anderson, and after he was cuffed are in dispute, the Court must leave the disputed question of fact to the jury – Anderson says he was struck while being cuffed and kicked after he was restrained; Defendants deny both claims. *See Gardenhire*, 205 F.3d at 311; *Poe v. Haydon,* 853 F.2d 418, 426 (6th Cir. 1988) (noting that a summary judgment based on a qualified immunity defense is not

appropriate in a § 1983 action "if there is a factual dispute (i.e. a genuine issue of material fact) involving an issue on which the question of immunity turns"). If a jury believes Anderson, Defendants are not entitled to qualified immunity.

The Court cannot decide whether Defendants are entitled to qualified immunity for their alleged assaults on Anderson because his claims turn on disputed questions of fact.

## V. CONCLUSION

Anderson's motion for summary judgment on his §1983 claim is **DENIED**.

**IT IS ORDERED**.

s/ Victoria A. Roberts  
Victoria A. Roberts  
United States District Judge

Dated: March 20, 2020