UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JERRY ANDERSON,

    Plaintiff,

v.                                       Case No. 17-12676
                                          Honorable Victoria A. Roberts

COLTER FURST, ET AL.,

    Defendants.

_____/

## ORDER DENYING PLAINTIFF'S MOTION FOR A NEW TRIAL [ECF No. 174]

**I.    Introduction**

Plaintiff Jerry Anderson ("Anderson") seeks a new trial against Defendants Colter Furst, Michael Thomas, and Nathan Ellis. Anderson alleges that the mere presence of two, armed Michigan Department of Corrections (MDOC) officers in the courtroom during his three-day jury trial prejudiced him and denied him his right to a fair and impartial jury trial. Defendants oppose the motion; they say Anderson cannot show inherent or actual prejudice.

Because the degree of security at trial is within the sound discretion of the Court and Anderson's history warranted security, the presence of the

1

MDOC officers did not create an unjustifiable risk of prejudice against Anderson. The Court **DENIES** Anderson's motion.

## II.  Background

On August 14, 2017, Anderson filed a 42 U.S.C. § 1983 lawsuit against Defendants, alleging they used excessive force during his arrest. In conducting a murder investigation, troopers attempted to pull Anderson's car over. But, Anderson led them on a high-speed chase. Once the Defendants stopped the car, Anderson claims they removed him and beat him up. They took Anderson into custody, and he eventually pled guilty to second degree murder and felony firearms. He is incarcerated now on those charges.

On February 16, 2022, a three-day civil jury trial began. Throughout the trial, two uniformed MDOC officers sat near Anderson and in front of the jury box. Anderson alleges the officers wore black coats with the word "Corrections" in bold capital white letters across the top-back of the coats. Defendants do not dispute these facts.

The jury returned a verdict in favor of Defendants.

## III.  Legal Standard

The grant of a new trial under Rule 59(a)(1)(A) of the Federal Rules of Civil Procedure requires the Court to "find that the jury has reached a

seriously erroneous result as evidenced by…the trial being unfair to the moving party in some fashion, *i.e.,* the proceedings being influenced by prejudice or bias." *Tompkins v. Crown Corr, Inc.,* 726 F. 3d 830, 835 (6th Cir. 2013) (citations omitted). A petitioner may show that a state procedure violated his right to a fair trial either by identifying an inherently prejudicial practice or by demonstrating actual prejudice. *Wilkens v. Lafler,* 487 F. App'x 983, 989 (6th Cir. 2012) (citing *Holbrook v. Flynn*, 475 U.S. 560, 572 (1986)).

IV.   **Analysis**

   A.   **Courts Have Discretion to Order Courtroom Security**

Anderson says the presence of identifiable MDOC officials in the courtroom created an unjustifiable risk of prejudice to him because their presence labeled him as a prisoner and effectively nullified the Motions in Limine this Court granted. [ECF No. 156, ECF No. 161]. In those orders, the Court allowed Anderson to wear civilian attire at trial, allowed him to be free of shackles and other visible restraints in front of the jury, and precluded Defendants from discussing his criminal conviction during the trial. Anderson claims that this nullification deprived him of his right to a fair and impartial jury trial.

A petitioner challenging a courtroom arrangement as inherently prejudicial must establish that the arrangement presented an unacceptable risk of impermissible factors coming into play. *Holbrook*, 475 U.S. at 570. Given the lack of specific rules for identifying unacceptable risks, courts must "do the best they can to evaluate the likely effects of a particular procedure [on the judgment of the jurors], based on reason, principle, and common human experience." *Estelle v. Williams*, 425 U.S. 501, 504 (1976).

There is no presumption of inherent prejudice where a party challenges the mere presence of courtroom security personnel as there is when a party wears visible shackles or prison clothes in front of a jury. *Holbrook*, 475 U.S. at 569. Instead, courts must engage in a case-by-case analysis when a party raises such a challenge. *Id.*; *Wilkens*, 487 F. App'x at 990. Importantly, a trial court may deploy security personnel in a courtroom even without an essential state interest to justify deployment in a particular trial. *Holbrook*, 475 U.S. at 568-569. So, even if there were a slight degree of prejudice from the presence of security personnel, there may be justification for that level of courtroom security. *Id.* at 571.

The degree of security provided at trial is within the sound discretion of the trial judge. *U.S. v. Clark*, 18 F.3d 1337, 1340 (6th Cir. 1994). There is no rigid framework that courts must follow before exercising that discretion.

4

However, factors such as security and escape risks are sound reasons to have security officers in the courtroom during trial. *Clark*, 18 F.3d at 1341; *See Holbrook*, 475 U.S. at 571 ("…sufficient cause for this level of security could be found in the state's need to maintain custody over defendants who had been denied bail after an individualized determination that their presence at trial could not otherwise be ensured.").

### 1. Anderson Did Not Suffer an Unjustifiable Risk of Harm

During Anderson's trial, the guards did nothing more than sit in the courtroom near Anderson in identifiable uniforms.

On similar facts and using the *Estelle* framework, the Sixth Circuit held that the presence of uniformed MDOC guards sitting near a defendant during his criminal jury trial did not prejudice the defendant. *Wilkens,* 487 F. App'x at 990. Like Anderson, Wilkens argued that the presence of prison guards created an unacceptable risk of influencing the jury's decision. The appellate court did note that a jury might perceive prison guards differently than police officers, but it also noted that the presence of uniformed prison guards "presents a subtler indication of incarceration than shackles or prison garb on a defendant." *Id*. at 989. The Sixth Circuit reasoned that a

5

reasonable judge could conclude that most jurors might overlook the "Corrections" insignia or may not infer anything from it. *Id.* at 990. The Sixth Circuit held that "…fairminded jurists could conclude that the presence of a few guards near Wilkens with Department of Corrections insignia fails to create an 'inherently prejudicial' circumstance or an 'unacceptable risk' of affecting jury deliberations." *Id*. at 989.

This case is nearly identical to *Wilkens*. The only difference is that Anderson is a plaintiff in a civil trial, and Wilkens was a defendant in a criminal trial. This distinction does not make a difference.

### 2. Anderson's Background Justified the Presence of Custodial Officials

Civil plaintiffs like Anderson present some of the same safety considerations as criminal defendants if escape attempts or serious felonies are in their background. *Lampkins* provides guidance in the civil arena.

During the civil jury trial, U.S. marshals sat near Lampkins as courtroom security personnel. *Lampkins v. Thompson*, 337 F.3d 1009, 1016 (8th Cir. 2003). Like Anderson, Lampkins was in custody for a criminal conviction during his civil trial. Lampkins moved for a new trial,

6

arguing that the presence of the officers prejudiced and denied him his right to a fair trial. *Id.* The district court denied the new trial motion, "noting Lampkins's [*sic*] incarceration required certain restraints on his freedom." *Id.* On appeal, the Eighth Circuit affirmed the district court's denial of the new trial motion and held that the district court properly exercised its discretion in employing the marshals at trial. *Id*. at 1017. The Court reasoned that Lampkins was incarcerated for drug and firearm possession, and that the district court had discretion to implement the "relatively minor security measures" it chose. *Id*.

Here, the Court deemed it necessary to have MDOC officials in the courtroom based on Anderson's prior conduct. Anderson led state troopers on a high-speed chase after they tried to pull him over. Also, Anderson pled guilty to second degree murder and felony firearms. Given Anderson's previous flight attempt and the seriousness of his convictions, it was within this Court's sound discretion to allow identifiable MDOC officials to sit in the courtroom during the trial for court security.

The Sixth Circuit validated the use of courtroom security personnel for those reasons. In *Clark*, five U.S. marshals were present in the courtroom during Clark's criminal trial. *Clark*, 18 F.3d at 1340. While all five were not in the courtroom simultaneously, Clark moved for a new trial,

arguing that the presence of the five marshals was prejudicial. *Id.* The Sixth Circuit held that the presence of the officers was justified and not prejudicial to Clark because he: 1) previously violated his bond; and 2) posed an escape risk. *Id*. at 1341. Anderson's situation is indistinguishable from Clark's.

## V.  Conclusion

The Court **DENIES** Anderson's motion for a new trial.

**IT IS ORDERED**

s/ Victoria A. Roberts  
Judge Victoria A. Roberts  
United States District Judge

Dated: June 22, 2022